NON-CONFIDENTIAL VERSION

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |  |
|---|---|---|
| COALITION FOR FAIR TRADE IN SHOPPING BAGS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 24-00157 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| DITAR, S.A., | ) ) | |
| Defendant-Intervenor. | ) ) | |

## COALITION FOR FAIR TRADE IN SHOPPING BAGS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, Plaintiff

Coalition For Fair Trade in Shopping Bags ("Plaintiff" or "the

Coalition") moves for judgment on the agency record with regard to

certain aspects of the determination of the United States Department of

Commerce ("Commerce") in *Certain Paper Shopping Bags From*

*Colombia: Final Affirmative Determination of Sales at Less Than Fair*

*Value,* 89 Fed. Reg. 45843 (Dep't Commerce May 24, 2024) and accompanying Decision Memorandum (the "*Final Determination*").

Plaintiff respectfully requests the Court to rule that certain aspects of the *Final Determination* are unsupported by substantial evidence on the record or otherwise not in accordance with law. Plaintiff further requests that the Court remand the *Final Determination* to Commerce with instructions to reconsider whether certain transactions had been misreported by respondent Ditar, S.A. as home market sales and, if so, to reconsider whether facts available should have been applied when calculating Ditar's dumping margin. If Ditar's rate is amended on remand, Plaintiff further requests that the "all-others" rate also be adjusted, as appropriate.

The reasons justifying this motion are set forth in the accompanying Memorandum Of Law In Support Of Coalition For Fair Trade in Shopping Bags' Rule 56.2 Motion For Judgment Upon The Agency Record.

Respectfully submitted,

<u>January 22, 2025</u>
Date

*/s/ Daniel Schneiderman*
J. Michael Taylor
JMTaylor@KSLAW.com

2

Daniel L. Schneiderman
DSchneiderman@KSLAW.com

King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4706
(202) 737-0500

*Counsel for Plaintiff*

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| COALITION FOR FAIR TRADE IN SHOPPING BAGS, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Court No. 24-00157 |
| UNITED STATES, ) ) | |
| Defendant, ) ) | |
| and ) ) | |
| DITAR, S.A., ) ) | |
| Defendant-Intervenor. ) ) | |

## ORDER

Upon consideration of Coalition For Fair Trade in Shopping Bags'
Rule 56.2 Motion For Judgment Upon The Agency Record, and upon
consideration of other papers and proceedings herein, it is hereby

ORDERED that the motion is granted; and it is further

ORDERED that this case is remanded to the U.S. Department of
Commerce ("Commerce") to reconsider whether certain transactions
were misreported by respondent Ditar, S.A. as home market sales and,

if so, to reconsider whether facts available should be applied when

calculating Ditar's dumping margin; and it is further

ORDERED that, if Ditar's margin is amended on remand, the "all-

others" rate also shall be adjusted, as appropriate.


_____

Judge

Dated: _____    U.S. Court of International Trade

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |
|---|---|
| COALITION FOR FAIR TRADE IN SHOPPING BAGS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| DITAR, S.A., | ) ) |
| Defendant-Intervenor. | ) ) ) |

Court No. 24-00157

## PLAINTIFF COALITION FOR FAIR TRADE IN SHOPPING BAGS' MEMORANDUM OF LAW IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD

J. Michael Taylor
Daniel L. Schneiderman

King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4706
(202) 737-0500

January 22, 2025          *Counsel for Plaintiff*

# TABLE OF CONTENTS

I.    ADMINISTRATIVE DETERMINATION SOUGHT TO
      BE REVIEWED ........................................................................... 1

II.   PROCEDURAL HISTORY & FACTUAL
      BACKGROUND ........................................................................ 2

III.  ISSUES PRESENTED ................................................................ 5

IV.   STANDARD OF REVIEW ......................................................... 6

V.    ARGUMENT ................................................................................ 7

      A.    Commerce Erred In Concluding That Ditar
            Properly Reported Certain Transactions As Home
            Market Sales ..................................................................... 7

            1.    The finding that Ditar's sales involving
                  "plate charges" were properly reported as
                  home market sales is unsupported by
                  substantial evidence and is not in
                  accordance with law ............................................. 7

            2.    The failure to consider application of facts
                  available is unsupported by substantial
                  evidence and is not in accordance with law ...... 14

      B.    If Ditar's Margin Is Amended On Remand,
            Commerce Also Should Recalculate The "All
            Others" Rate .................................................................... 19

VI.   CONCLUSION AND PRAYER FOR RELIEF ..................... 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
  802 F.3d 1339 (Fed. Cir. 2015) .......................................................... 15

*Allegheny Ludlum Corp. v. United States*,
  215 F. Supp. 2d 1322 (CIT 2000) .......................................................... 8

*Asociacion Colombiana de Exportadores de Flores. v. United States*, 704 F. Supp. 1068 (CIT 1988) .................................................. 7

*Consolidated Edison Co. v. NLRB*,
  305 U.S. 197 (1938) .......................................................... 6

*Diamond Sawblades Manufacturers' Coalition v. United States*, 42 CIT __, Slip Op. 2018-146 (CIT 2018) ........................ 18, 19

*CS Wind Vietnam Co. v. United States*,
  832 F.3d 1367 (Fed. Cir. 2016) .................................................... 6, 14

*Guizhou Tyre Co. v. United States*,
  519 F. Supp. 3d 1248 (CIT 2021) .......................................................... 7

*Itochu Bldg. Prods., Co., Inc, v. United States*,
  163 F. Supp. 3d 1330 (CIT 2016) .......................................................... 7

*Matra Ams. LLC v. United States*,
  681 F. Supp. 3d 1339 (CIT 2024) ........................................................ 16

*Metallverken Nederland B.V. v. United States*,
  728 F. Supp. 730 (CIT 1989) .......................................................... 6

*Stupp Corp. v. United States*,
  359 F. Supp. 3d 1293 (CIT 2019) .......................................................... 9

*Suzano S.A. v. United States*,
  589 F. Supp. 3d 1225 (CIT 2022) .................................................... 6, 7

*Universal Camera Corp. v. NLRB*,
  340 U.S. 474 (1951) ...................................................................... 6

*Z.A. Sea Foods Pvt. Ltd. v. United States*,
  569 F. Supp. 3d 1338 (CIT 2022) ............................................... 9

**Statutes**

19 U.S.C. § 1516a(b) .................................................................... 6

19 U.S.C. § 1677a .................................................................. 16, 17

19 U.S.C. § 1677a(a) .............................................................. 9, 11

19 U.S.C. § 1677b(a) .................................................................... 8

19 U.S.C. § 1677e(a) .............................................................. 14, 15

19 U.S.C. § 1677e(b) .................................................................. 14

**Other Authorities**

*Common Alloy Aluminum Sheet from India*,
  86 Fed. Reg. 13282 (March 8, 2021) ...................................... 9, 10

*Stainless Steel Sheet and Strip in Coils From Italy*,
  64 Fed. Reg. 30750 (June 8, 1999) ............................................ 8

# **GLOSSARY**

AFA          Adverse Facts Available

SEQH       Sequence Number (for transactions reported in the home market sales listing)

VAT         Value-Added Tax

**PLAINTIFF COALITION FOR FAIR TRADE IN SHOPPING BAGS'
MEMORANDUM OF LAW IN SUPPORT OF RULE 56.2 MOTION
<u>FOR JUDGMENT UPON THE AGENCY RECORD</u>**

Coalition For Fair Trade in Shopping Bags ("Plaintiff" or "the Coalition") submits the following memorandum in support of its Motion for Judgment on the Agency Record in accordance with Rule 56.2(c) of the Rules of the United States Court of International Trade. For the reasons set forth below, Plaintiff respectfully requests that the Court reverse the challenged determination of the U.S. Department of Commerce ("Commerce") and remand with instructions to recalculate the dumping margin for the respondent Ditar, S.A. ("Ditar"), which is also a defendant-intervenor in this appeal.

## I. ADMINISTRATIVE DETERMINATION SOUGHT TO BE REVIEWED

Plaintiff seeks review of the final determination in the antidumping duty investigation in *Certain Paper Shopping Bags From Colombia: Final Affirmative Determination of Sales at Less Than Fair Value,* 89 Fed. Reg. 45843 (Dep't Commerce May 24, 2024), Appx1556, and accompanying Decision Memorandum, Appx1533, (the "*Final Determination*").

## II.    PROCEDURAL HISTORY & FACTUAL BACKGROUND

Commerce initiated this antidumping investigation on June 20, 2023. *Certain Paper Shopping Bags From Cambodia, the People's Republic of China, Colombia, India, Malaysia, Portugal, Taiwan, the Republic of Turkey, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 88 Fed. Reg. 41589 (Dep't Commerce June 27, 2023), Appx5984. Commerce selected Ditar, S.A. ("Ditar"), Industria Colombiana de Papeles ("Incolpa"), and Fabrica de Bolsas de Papel ("Unibol") as mandatory respondents. *Certain Paper Shopping Bags From Colombia: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 319 (Dep't Commerce Jan. 3, 2024), Appx8254. Because Incolpa and Unibol did not cooperate in the investigation, their margins were based on a total AFA rate of 56.14 percent. Appx8257. Ditar's preliminary rate was calculated as 9.48 percent, and that margin also was used as the "all others" rate. *Id.*

After the preliminary determination, an on-site verification of Ditar's sales questionnaire responses was conducted in Colombia during

2

NON-CONFIDENTIAL VERSION

February 5 through February 9, 2024.  Appx5773.  Commerce selected

four – a mere handful (out of [          ]) – of sales to examine

individually at verification.  One of those pre-selected sales, SEQH

[     ], involved "plate charges," which "cover the cost of designing the

'plates' that are used to imprint the ink for artwork on a paper bag."

Appx5776.  This sale had been reported as a home market sale, but it

was discovered at verification that the sale was made to an unaffiliated

reseller in Colombia for export to the United States.  Company officials

acknowledged to the Commerce verifiers that, at the time of sale to the

Colombian reseller, Ditar was aware that the shopping bags were

destined for export to the United States.  *Id.*  Such awareness was

based on the [



]. *Id.*

On April 1, 2024, the Coalition filed a case brief arguing that,

based on the verification report, Ditar had misclassified certain U.S.

sales as home market sales, and that Ditar's final margin should be

based on AFA.  Appx5799-5814.  As the Coalition explained, Ditar's

misreporting of U.S. sales as home market sales was a fundamental

flaw in its response, and there was no way to ensure that this reporting error was limited to the one sale examined at verification.  Appx5804-5812.

In the *Final Determination*, however, Commerce disagreed that any sales had been misclassified or that necessary information was missing from the record.  Appx1539-1540, Appx1545.  Commerce found that the transaction at issue had been properly reported as a home market sale, because the record lacked evidence that Ditar itself prepared export documentation or shipped the merchandise directly to a U.S. destination.  *Id*.  Commerce neglected, however, to consider whether the transaction should have been reported as a U.S. sale due to Ditar's knowledge that its Colombian customer would export the merchandise.  *Id*.

Because of this error, Commerce declined to apply facts available (let alone facts available with an adverse inference).  *Id*.  Ditar's final rate was calculated as 11.06 percent, and that same margin also was used as the "all others" rate.  *Certain Paper Shopping Bags From Colombia: Final Affirmative Determination of Sales at Less Than Fair*

4

*Value,* 89 Fed. Reg. 45843 (Dep't Commerce May 24, 2024), Appx1557.

This appeal ensued.

## III.  ISSUES PRESENTED

This appeal presents the following issues:

1) Whether Commerce's finding that Ditar's sale with "plate charges" was properly reported as a home market sale, notwithstanding the respondent's knowledge that the merchandise was destined for exportation and consumption in the United States, was supported by substantial evidence and otherwise in accordance with law; and

2) Whether Commerce's decision not to apply facts available, which was predicated on the above-mentioned erroneous finding that Ditar's transaction was properly reported as a home market sale, was supported by substantial evidence and otherwise in accordance with law.

For the reasons explained below, Commerce's decisions with respect to these issues are unsupported by substantial evidence and otherwise not in accordance with law.  Commerce's determination that Ditar properly reported sales it knew were intended for the U.S. market at home-market sales was erroneous.  Consequently, the basis for Commerce's refusal to apply facts available was flawed, and the matter should be remanded for Commerce to reconsider application of facts available (including facts available with adverse inferences).

## IV.   STANDARD OF REVIEW

The statute requires the Court to "hold unlawful any determination, finding, or conclusion found … to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B).  Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Under the substantial evidence standard, the Court is not to reweigh the evidence or substitute its judgment for that of Commerce.  *Metallverken Nederland B.V. v. United States*, 13 CIT 1013, 1017, 728 F. Supp. 730, 734 (1989).  The Court, however, must take into account the entire record, including evidence that detracts from the conclusion reached by Commerce.  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) (Commerce "must take into account whatever in the record fairly detracts from" the weight of the evidence).  "Although Commerce is not required to address all the evidence submitted," the agency "must address any arguments made by the parties that are material to Commerce's determination."  *Suzano S.A. v. United States*,

6

46 CIT ___, ___, 589 F. Supp. 3d 1225, 1233 (2022), quoting *Itochu Bldg. Prods., Co., Inc. v. United States*, 40 CIT__, __, 163 F. Supp. 3d 1330, 1337 (2016).  "An argument is material if it is a 'focal point' of a party's argument or if a final determination cannot be 'sufficiently reviewed without specific discussion of the issue.'" *Id.*, quoting *Asociacion Colombiana de Exportadores de Flores v. United States*, 12 CIT 1174, 1177, 704 F. Supp. 1068, 1071 (1988).

## V.    ARGUMENT

### A.    Commerce Erred In Concluding That Ditar Properly Reported Certain Transactions As Home Market Sales

#### 1.    The finding that Ditar's sales involving "plate charges" were properly reported as home market sales is unsupported by substantial evidence and is not in accordance with law

Dumping calculations, at bottom, reflect the extent to which a respondent engages in "price discrimination," *i.e.*, the margin by which sales prices in the home market (the basis for "normal value") exceed export prices to the United States.  *See, e.g., Guizhou Tyre Co. v. United States*, 519 F. Supp. 3d 1248, 1250 (Ct. Int'l. Tr. 2021).  It is thus fundamental to these calculations that respondents correctly identify those transactions that should be reported as "home market" sales and

7

those that should be reported as "U.S. sales." Commerce has long stated that "the failure to report U.S. sales data is one of the most serious errors a respondent can commit." *Stainless Steel Sheet and Strip in Coils From Italy*, 64 Fed. Reg. 30750, 30757 (June 8, 1999) (final determination). But it is perhaps even more serious when sales improperly omitted from the U.S. sales listing are then erroneously added to the home market sales listing, thereby compounding the distortion.

The rules for reporting the appropriate market for any particular sale are straightforward and largely depend on the respondent's knowledge with respect to where the product will be consumed. Under the normal value provision of the statute, respondents must report sales of the foreign like product "for consumption in the exporting country." 19 U.S.C. § 1677b(a)(1)(B)(i). Thus, "in implementing the provisions of 19 U.S.C. § 1677b(a), sales should be included within the home market database if the producer knew or should have known that the merchandise was… for home consumption based upon the particular facts and circumstances of the case." *Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322, 1330-31 (CIT 2000) (internal citations

omitted). *See also Z.A. Sea Foods Pvt. Ltd. v. United States*, 569 F. Supp. 3d 1338, 1352-53(CIT 2022); *Stupp Corp. v. United States*, 359 F. Supp. 3d 1293, 1310 (CIT 2019).

Conversely, the export price provision of the statute requires respondents to report sales "to an unaffiliated purchaser in the United States *or to an unaffiliated purchaser for exportation to the United States*." 19 U.S.C. § 1677a(a) (emphasis added). Thus, a respondent must report transactions in the U.S. sales file, even when the sale is not made directly to a customer located in the United States, when the respondent "knew, or should have known, that the merchandise was destined for the United States." *Common Alloy Aluminum Sheet from India*, 86 Fed. Reg. 13282 (March 8, 2021) (final determination) at Comment 4 (applying partial AFA for failure to include in the U.S. sales listing shipments to customers in India under circumstances where the respondent knew, or should have known, the product would ultimately be exported to the United States).

In this case, information gathered during verification revealed that certain of Ditar's transactions reported in the home market sales listing should instead have been classified as export sales. This became

evident from a review of SEQH [        ], the second of four home market

sales "pre-selected" by Commerce for examination at verification.

Appx5776, Appx5787-5788.  This sale involved separate "plate charges"

associated with the plates used to imprint the ink for artwork on the

bag.  Appx5776.  At verification, Ditar acknowledged that, although this

sale was made to an unaffiliated reseller located in Colombia, Ditar

"had knowledge that the merchandise would subsequently be exported

to the United States."  Appx5776.  Such knowledge was "based on the

fact that [

        ]," as well as "[

        ]."  *Id.*  In other words,

Ditar admitted that it knew at the time of sale that the merchandise

was not for consumption in Colombia, and that its Colombian customer

intended to export the bags at issue to the United States.  Appx5776,

Appx5787-5788, Appx5189-5214.

    In the *Final Determination*, after the issue was briefed, Commerce

erroneously found that "the sale in question was properly reported as a

home market sale."  Appx1540.  As support, Commerce cited the facts

that (a) Ditar did not itself prepare any shipping, handling, packing, or

export documentation relating to a shipment to the United States, (b)
no "special labeling" or "special packing" was used, and (c) VAT, which is
not required for export sales, was charged for this sale. Appx1539-1540.
Commerce, in other words, relied largely on negative evidence, *i.e.*, the
absence of something that presumably would have been present had the
sales been for export. From this negative evidence, Commerce
concluded that "the record does not support a finding that Ditar had
knowledge that the merchandise was intended to be exported and resold
in the United States at the time of sale to the customer." Appx1539.

This conclusion does not logically follow from the evidence cited.
Again, under the statute, there are *two types* of transactions that must
be reported as U.S. sales: (1) sales "to an unaffiliated purchaser in the
United States" and (2) sales "to an unaffiliated purchaser for
exportation to the United States." 19 U.S.C. § 1677a(a). The evidence
cited by Commerce addresses *only the first type*. Had SEQH [      ]
been sold directly to a customer located in the United States, it is
reasonable to assume that a U.S. destination would have appeared in
Ditar's shipping or other export documentation, and Ditar likely would
not have charged VAT (as a VAT-exempt transaction). The Coalition

acknowledges, therefore, that substantial evidence supports that SEQH

[     ] was not sold by Ditar to an unaffiliated purchaser in the United

States.

Entirely missing from Commerce's analysis, however, is

consideration of whether SEQH [     ] was sold "to an unaffiliated

purchaser for exportation to the United States."  The negative evidence

cited by Commerce had no bearing on that question.  If sales were made

by Ditar to a customer located in Colombia with the knowledge and

expectation that the customer, rather than Ditar, would export the

merchandise to the United States – as was the case here – such

transactions would still constitute U.S. sales under the statute.  Under

those circumstances, however, one would not necessarily expect that

Ditar itself would have produced any shipping or export documentation,

or prepared any special packing or labeling, indicating a U.S.

destination.  Presumably, those would be created by the unaffiliated

reseller.  Similarly, one would not necessarily expect that the sale by

Ditar to the unaffiliated customer in Colombia would be VAT-exempt.

Presumably, it would be the downstream export sale that would be VAT-

exempt.  Commerce failed to explain why it believed the lack of

shipping or export documentation produced by Ditar, and the charging of VAT to the Colombian customer, ruled out Ditar's knowledge that the merchandise was destined for a downstream export sale. Commerce's finding, therefore, is unsupported by substantial record evidence.

In fact, Commerce's finding is wholly refuted by the record evidence. Again, Ditar *admitted* at verification that the sale to the customer located in Colombia was made with the "knowledge that the merchandise would subsequently be exported to the United States." Appx5776.[1] Ditar acknowledged that it knew this at the time of sale, because (1) separate plate charges were [

] and (2) the bag [

]. Appx5776. This should have been dispositive. But in the *Final Determination*, Commerce appears simply to have ignored this evidence, which directly contradicted Commerce's conclusion that "the record does not support a finding that Ditar had knowledge that

---

[1]     Ditar claimed at verification that, at the time of sale, it did not know *when* the unaffiliated reseller would export the merchandise. Appx5776. [          ] of the bags had been exported within [

]. *Id.* The timing of the unaffiliated reseller's downstream sale, however, is entirely irrelevant to this analysis. The questionnaire required Ditar to report its own sales made during the POI, regardless of when the merchandise would have entered the United States. *See*

the merchandise was intended to be exported and resold in the United

States at the time of sale to the customer." Appx1539. This constitutes

clear error, as Commerce "must take into account whatever in the

record fairly detracts from" the weight of the evidence. *CS Wind*

*Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016).

For this reason, the case should be remanded so that Commerce

may reconsider, in light of the full record, whether the transaction at

issue should have been reported as a sale "to an unaffiliated purchaser

for exportation to the United States."

### 2. The failure to consider application of facts available is unsupported by substantial evidence and is not in accordance with law

Under the statute, where "necessary information is not available

on the record," or where such information "cannot be verified,"

Commerce "shall" use "facts otherwise available in reaching the

applicable determination." 19 U.S.C. § 1677e(a). In selecting among

the facts otherwise available, Commerce may apply an inference that is

adverse to a party that "has failed to cooperate by not acting to the best

of its ability to comply with a request for information." 19 U.S.C. §

---

Antidumping Questionnaire at C-1-2. Appx7154-7155.

1677e(b).  Application of "total" facts available is appropriate for responses that are so deficient that they are unusable in their entirety, whereas "partial" facts available typically are applied to fill gaps in responses that are otherwise usable.  *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1357 (Fed. Cir. 2015).

Petitioners, in their agency case brief, demonstrated that (1) necessary information regarding SEQH [     ] as an export sale rather than a home market sale was missing from the record pursuant to 19 U.S.C. § 1677e(a), (2) Ditar's broader reporting as home market sales other transactions involving "plate charges" or [

           ] was unreliable, and (3) facts available should have been applied to fill gaps in Ditar's reporting.  Appx5804-5813.  Commerce rejected those arguments, because it erroneously believed that Ditar's reporting was accurate.  Appx1539-1540.  The *Final Determination* states that, because "the sale in question was properly reported," it is not "suggestive of systematic misreporting which calls into question the accuracy of the universe of sales reported in either market."  Appx1540. In other words, because it found SEQH [     ] to have been reported correctly, Commerce found no basis to apply facts available under 19

15

U.S.C. § 1677a.

For the reasons set forth in subsection 1 above, however, Commerce's underlying findings lack substantial evidentiary support. This Court has made clear that Commerce may not decline to apply facts available – or even AFA – unless the decision is supported by substantial evidence and in accordance with law. *Matra Ams. LLC v. United States*, 681 F. Supp. 3d 1339, 1351 and 1374-75 (Ct. Int'l Tr. 2024) (remanding where Commerce's decision not to apply facts available was based on findings that were unsupported by substantial evidence). In this case, because the predicate finding for the decision not to apply facts available was unsupported by substantial evidence, the failure to apply facts available also must be unsupported by substantial evidence and not in accordance with the law.

Because Commerce's decision not to apply facts available was based on an incorrect factual finding, this case should be remanded so that Commerce can reconsider whether and what kind of "gap filling" is necessary. If Commerce finds on remand that the sale should not have been reported as a home market sale, Commerce must reconsider whether necessary information is missing from the record or cannot be

16

NON-CONFIDENTIAL VERSION

verified, and whether facts available should be applied under 19 U.S.C. § 1677a.

As part of the analysis, Commerce should reconsider how widespread the misreporting may have been. In the *Final Determination*, Commerce disagreed that this issue may impact other sales, because Commerce "confirmed that Ditar's other sales to this customer were in fact destined for customers in Colombia, and not for eventual sale to the United States." Appx1540. As the Coalition explained in their agency brief, however, Commerce individually examined only four out of [     ] home market transactions, so the fact that one of those four sales was misclassified implies a much more widespread problem. Appx5810. In the *Final Determination*, Commerce failed to address the matter. Moreover, even if Ditar had no other sales to this particular customer destined for export, Commerce's finding says nothing about whether reported sales to Ditar's [     ] other unaffiliated reseller customers in Colombia may have been misclassified. *See* Appx5809. The record is unclear regarding the extent to which similar transactions were misreported by Ditar as home market sales. *Id.*

The Coalition further observed that Ditar included in the home market sales listing shipments of many other bags [

          ], which indicated knowledge that the bags would be exported. Appx5810. Commerce found that to be "speculative," since those could be "global brand names." Appx1540. But again, this ignored Ditar's admission that its knowledge that "[

                         ]." Appx5776. Commerce's finding, therefore, is unsupported by substantial evidence, and the record remains unclear as to the extent of Ditar's misreporting.

In *Diamond Sawblades Manufacturers' Coalition v. United States* ("*Diamond Sawblades*"), this Court found that Commerce had erred in failing to explain why errors discovered at verification would not have been widespread. According to the Court,

> Commerce's explanation for concluding that
> errors in reporting physical characteristics were
> not widespread is similarly insufficient. *Id.* at 31.
> The errors affected three out of sixteen
> transactions identified at verification, and related
> to multiple product characteristics. *Id.*; *see also*
> VR at 2, 7…. Further, while Commerce
> downplayed the errors identified at verification,
> those errors affect a substantial percentage of the
> sample transactions reviewed at verification, and
> Commerce has not pointed to anything unique

18

> about the reviewed samples that would suggest
> such errors were limited to those samples.

*Diamond Sawblades*, 42 CIT __, __, Slip Op. 2018-146 at 17-18 (Ct. Int'l
Tr. 2018).  Here, as in *Diamond Sawblades*, Commerce failed
sufficiently to explain why this error would not have undermined the
reliability of a substantial portion of Ditar's sales.  On remand, if the
record is unclear with respect to the extent of any potential
misreporting, Commerce should consider whether total AFA may be an
appropriate remedy.

### B.    If Ditar's Margin Is Amended On Remand, Commerce Also Should Recalculate The "All Others" Rate

In the *Contested Determination*, the "all others" rate assigned to
exporters other than Ditar was understated because that rate was
based on the 11.06 percent final margin calculated for Ditar.  If at the
conclusion of this litigation Ditar's margin is revised, the "all others"
rate should be recalculated in accordance with law.

## VI.    CONCLUSION AND PRAYER FOR RELIEF

For the reasons set forth above, Plaintiff requests that the Court enter judgment on the administrative record in its favor and remand the *Final Determination* with instructions for Commerce to reconsider whether certain transactions were misreported by Ditar as home market sales and, if so, to reconsider whether facts available should be applied when calculating Ditar's dumping margin.

Respectfully submitted,

January 22, 2025          /s/ Daniel Schneiderman
Date                               J. Michael Taylor
                                        JMTaylor@KSLAW.com

                                        Daniel L. Schneiderman
                                        DSchneiderman@KSLAW.com

                                        King & Spalding LLP
                                        1700 Pennsylvania Avenue, NW
                                        Washington, DC  20006-4706
                                        (202) 737-0500

                                        *Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE
## WITH WORD COUNT LIMITATIONS

Pursuant to paragraph 2(B)(2) of the U.S. Court of International Trade's *Standard Chambers Procedures*, the undersigned certifies that this brief complies with applicable word count limitations.  Exclusive of the exempted portions, as provided in paragraph 2(B)(1), this brief includes 3,680 words.  In preparing this certificate, the undersigned has relied upon the word count feature of the word-processing system used to prepare the submission.

/s/ Daniel Schneiderman
Daniel L. Schneiderman

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500

*Counsel for Plaintiff*

January 22, 2025