# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

COALITION FOR FAIR TRADE IN
SHOPPING BAGS,
     Plaintiff,

v.

UNITED STATES,
     Defendant,
and

DITAR, S.A.,
     Defendant-Intervenor.

Court No. 24-00157

**PUBLIC VERSION**

## DEFENDANT-INTERVENOR'S RESPONSE TO COALITION'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Ditar, S.A.

Dated:  May 22, 2025

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................i

TABLE OF AUTHORITIES ........................................................................ii

I.    STATEMENT PURSUANT TO RULE 56.2(c) ...............................1

II.   ISSUE OF LAW PRESENTED.......................................................2

III.  STATEMENT OF FACTS..............................................................2

IV.   SUMMARY OF ARGUMENT .......................................................4

V.    ARGUMENT ................................................................................4

    A.    Record Evidence Does Not Establish That Ditar Had
        Knowledge at the Time of Sale That any Home Market Sale
        Would Be Exported to the United States .............................4

    B.    Substantial Evidence Does Not Support Plaintiff's Concern
        That the Market Classification of One Home Market Invoice
        Extends to the Universe of Ditar's Reported Home Market
        Sales ................................................................................16

VI.   CONCLUSION............................................................................19

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                    <u>Page</u>

*Carlisle Tire & Rubber Co. v. United States*, 622 F. Supp. 1071 (Ct. Int'l
Trade 1988)............................................................................................. 12

*Duram Gida Sanyi Ve Ticaret A.S. v. United States*, 311 F. Supp. 3d
1367 (Ct. Int'l Trade 2018) .................................................................... 12

*Micron Technology v. United States*, 893 F. Supp. 21 (Ct. Int'l Trade
1995) ...................................................................................................... 12

*Wonderful Chemical Indus v. United States*, 259 F. Supp. 2d 1273, 1279
(Ct. Int'l Trade 2003)............................................................................... 8

<u>Administrative Authorities</u>

*Aluminum Extrusions from the People's Republic of China: Final
Results of Antidumping Duty Administrative Review and Rescission, in
Part, 2010/12*, 79 Fed. Reg. 96 (Jan. 2, 2014) ......................................... 6

*Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts
Thereof From France, et al.; Final Results of Antidumping Duty
Administrative Reviews, Partial Termination of Administrative Reviews,
and Revocation in Part of Antidumping Duty Orders*, 60 Fed. Reg.
10,900 (Feb. 28, 1995) ............................................................................. 5

*Certain Circular Welded Non-Alloy Steel Pipe From Mexico: Final
Results of Antidumping Duty Administrative Review*, 75 Fed. Reg.
20,342 (April 19, 2010) ........................................................................... 14

*Certain Cut-to-Length Carbon Quality Steel Plate Products from Italy*,
71 Fed. Reg. 11,178 (March 6, 2006)........................................................ 7

*Certain Crystalline Silicon Photovoltaic Products From Taiwan; 2019-
2020*, 86 Fed. Reg. 49,509 (Sept. 3, 2021) ................................. 6, 7, 13, 15

*Certain Freight Rail Couplers and Parts Thereof from Mexico*, 88 Fed. Reg. 65,153 (Sept. 21, 2023) .................................................................. 14

*Certain In-Shell Raw Pistachios from Iran*, 70 Fed. Reg. 7,470 (Feb. 14, 2005) ......................................................................................... 7-8, 13

*Certain Paper Shopping Bags From Colombia: Final Affirmative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 45,843 (May 24, 2024) ................................................................................. *passim*

*Certain Pasta From Italy: Termination of New Shipper Antidumping Duty Administrative Review*, 62 Fed. Reg. 66,602 (Dec. 19, 1997) .......... 7

*Certain Welded Carbon Steel Standard Pipes and Tubes from India: Preliminary Determination; 2022-2023*, 89 Fed. Reg. 8,160 (Feb. 6, 2024) ............................................................................................. 13

*DRAMs from Korea* 64 Fed. Reg. 69,694 (Dec. 14, 1999) .................. 15-16

*Grain-Oriented Electrical Steel From the Czech Republic*, 79 Fed. Reg. 58,324 (September 29, 2019) ................................................................. 12

*Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Synthetic Indigo from the People's Republic of China*, 64 Fed. Reg. 69,723 (Dec. 14, 1999) .......................... 6

Other Authorities

Statement of Administrative Action Accompanying the Trade Agreements Act of 1979, H.R. Rep. No. 4537, 388, 411, *reprinted in* 1979 U.S.C.C.A.N. 665 ...................................................................................... 5

**DEFENDANT-INTERVENOR'S RESPONSE TO COALITION'S
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, and this Court's April 4, 2025, Order, ECF No. 27, Defendant-Intervenor, Ditar, S.A., a foreign producer and exporter of paper shopping bags from Colombia, responds to Plaintiff Coalition for Fair Trade in Shopping Bags' January 22, 2025, Motion for Judgment on the Agency Record, ECF No. 22 ("Coalition Brief"). As discussed herein and in Defendant United States's April 15, 2025, Response Brief, ECF No. 28 ("Def. Br."), the arguments made by the Coalition challenging the U.S. Department of Commerce's determination not to apply facts otherwise available with an adverse inference to Ditar's home market sales reporting in the antidumping duty investigation of paper shopping bags from Colombia are without merit and should be rejected.

## I.    STATEMENT PURSUANT TO RULE 56.2(c)

The administrative determination under consideration is *Certain Paper Shopping Bags From Colombia: Final Affirmative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 45,843 (Dep't Commerce May 24, 2024) ("*Final Determination*"), Appx1556–1558. The challenged determination, findings, and conclusions are set forth in Commerce's

1

unpublished Issues and Decision Memorandum (Dep't Commerce May

17, 2024) ("*Final Decision Memorandum*"), Appx1533–1555.

## II.   <u>ISSUE OF LAW PRESENTED</u>

Whether Commerce's determination that Ditar correctly classified a

certain sale to a Colombian customer as a home market sale rather

than as a U.S. sale was based on substantial evidence when all of the

documentary evidence on the administrative record supports

Commerce's finding that Ditar had no knowledge *at the time of sale* that

the merchandise would be exported to the United States.

## III.   <u>STATEMENT OF FACTS</u>

Ditar agrees generally with Plaintiff Coalition's and Defendant's

statements of facts, and identifies some additional facts and context

that are both important and relevant to the legal arguments presented.

During verification, Ditar queried whether one of its reported home

market sales (i.e., SEQH [      ] to home market customer [        ])

should have been reported instead as a U.S. sale. Appx5776. The sale in

question was contained on domestic invoice [            ] and was sold

and delivered to customer [      ] in Colombia. Appx5192. Ditar

invoiced this sale in Colombian pesos and recorded the sale in its

accounting system under its domestic sales account [                    ].

Appx4865, Appx5193. When Ditar shipped the merchandise to its

customer [        ], the merchandise was physically delivered 1012

kilometers from Ditar's plant in the *port* city of Barranquilla to the

*inland* city of Bogota. *See* Appx5194-Appx5199 ("Direccion: Bogota D.C.

Colombia"); *see also* Appx4429. Moreover, Ditar added to the invoice

total value-added taxes (VAT) of 19% that are applicable only to home

market sales (and not applicable to export sales). Appx5192-Appx5193.

Ditar explained to Commerce at verification that it "*normally* builds

the price of the plates into its home market sales," Appx5776 (emphasis

added). Because Ditar does not "always" build the price of plates into its

home market sales, the existence of plate charges on an invoice is not

100% determinative of whether a sale is for export.  Ditar also indicated

that *after* making this sale in January 2023, Ditar learned that "its

home market customer warehoused the merchandise, then [ ] months

later, sold about [      ] the product to its U.S. customer," and then [ ]

months later "sold most of the remaining bags." Appx5776. Ditar

further explained that its understanding was that "at the time of

verification, at least [        ] bags remained unsold or {were} not yet

shipped to the United States by the unaffiliated home market

customer." Appx5776. Thus, even at the time of Commerce's February

2024 verification, more than a year after Ditar sold the merchandise to

customer [     ], Ditar was unaware whether all the merchandise sold

on invoice [       ] had been or would be exported. Appx5776.

## IV.   SUMMARY OF ARGUMENT

Plaintiff argues Ditar inaccurately reported to Commerce the

ultimate destination of one home market sale to customer [     ].

However, based on the factors Commerce considers in establishing

"knowledge," Ditar neither knew nor should have known *at the time of*

*sale* that any of the paper bags that it sold to customers in Colombia

was destined for export to the United States. Commerce's finding that

Ditar properly reported all sales in Colombia as home market sales thus

was supported by substantial evidence and in accordance with law.

## V.   ARGUMENT

### A.   Record Evidence Does Not Establish That Ditar Had Knowledge at the Time of Sale That any Home Market Sale Would Be Exported to the United States

Over the course of decades, Commerce has developed and applied

a "knowledge test" to determine when a party exporting goods to the

United States is subject to the antidumping laws. A foreign producer

passes the knowledge test – and its sales to an unrelated middleman

distributor in the country of production can be used to determine export

price – if the "producer knew or had reason to know at the time of sale

that the goods were for export to the United States." Statement of

Administrative Action Accompanying the Trade Agreements Act of

1979, H.R. Rep. No. 4537, 388, 411, *reprinted in* 1979 U.S.C.C.A.N. 665,

682. Commerce's "standard for the knowledge test is high," however,

and Commerce repeatedly has reiterated that it will not attribute U.S.

sales to a foreign producer absent the producer's *particular* knowledge

*at the time of sale* that the sales were destined for the United States.

*See, e.g., Antifriction Bearings (Other Than Tapered Roller Bearings)*

*and Parts Thereof From France, et al.; Final Results of Antidumping*

*Duty Administrative Reviews, Partial Termination of Administrative*

*Reviews, and Revocation in Part of Antidumping Duty Orders*, 60 Fed.

Reg. 10,900, 10,951-10,952 (Feb. 28, 1995).

    In determining whether a producer knew or should have known

its goods were destined for the United States, Commerce's strong

preference is to consider documentary or physical evidence over

individual observations and other unsubstantiated statements because the former evidence is more probative, reliable, and verifiable. *See Aluminum Extrusions from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Rescission, in Part, 2010/12*, 79 Fed. Reg. 96 (Jan. 2, 2014) (Decision Memorandum, at Comment 2). Commerce considers, for example, whether the relevant party prepared or signed any certificates, shipping bills, contracts, or similar documentation stating that the destination of the merchandise was the United States. *See Certain Crystalline Silicon Photovoltaic Products From Taiwan; 2019-2020*, 86 Fed. Reg. 49,509 (Sept. 3, 2021) (Decision Memorandum, at Comment 2), *citing Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Synthetic Indigo from the People's Republic of China*, 64 Fed. Reg. 69,723, 69,727 (Dec. 14, 1999) (unchanged in final determination). Commerce also considers whether the relevant party used any packaging or labeling stating that the merchandise was destined for the United States, or shipped the merchandise to a port or other "for-export" destination. *See Certain Crystalline Silicon Photovoltaic Products From Taiwan; 2019-2020*, 86 Fed. Reg. 49,509

(Sept. 3, 2021) (Decision Memorandum, at Comment 2), *citing Certain Pasta From Italy: Termination of New Shipper Antidumping Duty Administrative Review*, 62 Fed. Reg. 66,602 (Dec. 19, 1997). Commerce further examines whether the features or specifications of the products sold indicated that the merchandise could be used *only* in the United States. *See, e.g., Certain Cut-to-Length Carbon Quality Steel Plate Products from Italy*, 71 Fed. Reg. 11,178, 11,180 (March 6, 2006); *Pasta from Italy*, 62 Fed. Reg. 66,602 (Dec. 19, 1997).

In *Certain In-Shell Raw Pistachios from Iran*, Commerce explained its "knowledge" standards in detail:

> It is important to note that a general knowledge or belief on the part of a producer that an exporter sells to the United States is insufficient to establish knowledge with respect to particular sale(s). Rather, the standard for making a knowledge determination is that the producer must have reason to know *at the time of the sale* that the *specific sales* of subject merchandise were destined for the United States. *See Final Determination of Sales at Not Less Than Fair Value: Pure Magnesium From the Russian Federation*, 66 FR 49347 (September 27, 2001) (*Magnesium from Russia*), and accompanying Issues and Decision Memorandum at Comment 3. The possibility that the producer may have speculated that the goods might ultimately be destined for the United States is insufficient for a knowledge determination. Rather, the standard is whether the producer knew or should have known at the time of the sale that the goods were destined for the United States.

70 Fed. Reg. 7,470 (Feb. 14, 2005) (Decision Memorandum, at 11)

(emphasis in original); *see also Wonderful Chemical Indus v. United*

*States*, 259 F. Supp. 2d 1273, 1279 (Ct. Int'l Trade 2003) (discussing

Commerce's reliance on all these factors in determining whether the

producer had actual or constructive knowledge that the goods were

destined for the United States).

 In the less-than-fair-value investigation underlying this appeal,

Commerce examined the record evidence and found that the factors

upon which it relies to indicate knowledge of U.S. export were absent

with respect to the sale to home market customer [  ] on invoice

[   ]. *See* Appx1539–1540. Commerce thus concluded that Ditar

did not know and should not have known *at the time of sale* that the

merchandise it sold to [  ] was destined for the United States.

 Specifically, although invoice [   ] contained separately

itemized "plate charges," which Ditar indicated are "normally" built into

the price of home market sales, Commerce found that there was no

record evidence that Ditar prepared or signed any documents relevant

to the shipping, handling, and packing of subject merchandise that

stated that the merchandise was destined for export to the United

States. *See* Appx1539, Appx5776, Appx5787. Moreover, there was no record evidence indicating that Ditar prepared any export documents for sale to the United States with regard to the merchandise under consideration sold to [        ] on invoice [                ]. *See* Appx1539; *see also* Appx5190-Appx5214. Furthermore, the record is void of any evidence that Ditar used special labeling for its sale to [        ] that stated that the merchandise was destined for the United States. There also is no evidence that Ditar used specific U.S. packing for these sales. *See* Appx1539-Appx1540; *see also* Appx5190-Appx5214. Furthermore, record information did not establish that the paper shopping bags contained specifications so unique that the merchandise could be used *only* in the United States. Appx5190-Appx5214.

In addition, tax information on invoice [            ] not only did not establish that the ultimate destination of the products sold was the United States, but, in fact, indicated that the merchandise would be used in Colombia. Specifically, invoice [            ] included 19% value-added taxes. This is consistent with Ditar's reporting in its responses and confirmation at verification that, except for shipments to special locations (such as the VAT-free Colombian island of San Andreas),

Ditar collected VAT *on all home market sales*. *See* Appx1540, Appx5788; *see also* Appx4093 ("Domestic sales of goods and services are subject to an output VAT"). In contrast, Ditar reported to Commerce in its responses that merchandise sold to the United States was VAT-exempt. *See* Appx3993 (where Ditar explained that it did not report taxes for sales reported in its U.S. sales listing "because Colombia's VAT *does not apply to export sales*" (emphasis added)). That Ditar charged VAT on invoice [          ] – and that [      ] paid such taxes – constitutes substantial evidence that Ditar did not expect or know at the time of sale that the merchandise would be re-routed to the United States.

   Also informative is that Ditar delivered the merchandise on invoice [            ] from Ditar's plant in the Colombian *port* city of Barranquilla 1012 kilometers to the *inland* city of Bogota. *See* Appx5194-Appx5199 ("Direccion: Bogota D.C. Colombia"); *see also* Appx4429. That Ditar delivered the merchandise away from the Colombian coastline and port of export to a deeply inland destination further illustrates that Ditar did not have actual or constructive knowledge at the time of sale that the merchandise sold on invoice [            ] would be exported.

In its brief, Plaintiff Coalition recognizes that the record contains no documentary evidence to support its argument that Ditar knew at the time of sale that the merchandise on invoice [                    ] to [          ] would be exported to the United States. *See* Coalition Brief, at 10-12. Nonetheless, Plaintiff Coalition claims that this "negative evidence" has "no bearing" on whether Ditar might have sold "to an unaffiliated purchaser for exportation to the United States." Coalition Brief, at 12. Petitioner is mistaken. The lack of such evidence is directly relevant to whether Ditar sold to home market customer [         ] for exportation to the United States. Without such physical or documentary evidence, there is no independent information on the record to support Plaintiff Coalition's claim that the company had actual or constructive knowledge of eventual exportation. Here, Plaintiff Coalition pins its entire argument on Ditar's undocumented and otherwise unsupported assertion that [

                                                    ]. Coalition Brief, at 13. But this statement has no additional support in the record. Moreover, as Defendant explained in its response brief, Commerce does not rely on unsubstantiated assertions that are not supported by any physical or

documentary evidence and that are made well after the time of the

specific sale at issue. Def. Brief, at 42; *see also Grain-Oriented Electrical*

*Steel From the Czech Republic*, 79 Fed. Reg. 58,324 (September 29,

2019) (explaining that Commerce discounts *post-hoc* declarations in

favor of contemporaneous documentary evidence because the latter is

"more probative, reliable, and verifiable").[1]  This is not to say that

individual declarations cannot be used as evidence:  an assertion that is

unsupported goes to the weight of such evidence rather than its

admissibility. But Plaintiff Coalition has failed to establish how

Commerce's attachment of more controlling weight to the lack of any

documentary evidence than to an unsupported statement mentioned

only at verification was unreasonable in light of the record.

---

[1] *See also Duram Gida Sanyi Ve Ticaret A.S. v. United States*, 311 F. Supp. 3d 1367, 1371-72 (Ct. Int'l Trade 2018) (Commerce attaches more weight to documentary evidence than to unsupported declarations); *Carlisle Tire & Rubber Co. v. United States*, 622 F. Supp. 1071, 1082 (Ct. Int'l Trade 1988) (rejecting as substantial evidence a letter from defendant's counsel describing a verification procedure that Commerce did not describe in its verification report as unreliable to fill a gap in the record); *Micron Technology v. United States*, 893 F. Supp. 21, 27 (Ct. Int'l Trade 1995) (rejecting an attempt to justify Commerce's choice of a disputed cost allegation methodology solely with reference to a remark made by counsel at the administrative hearing).

Furthermore, as described above, a general knowledge or belief on the part of the first party in the sales chain that the next party might sell some products to the United States does *not* meet Commerce's "knowledge" standard. *Certain Welded Carbon Steel Standard Pipes and Tubes from India: Preliminary Determination; 2022-2023*, 89 Fed. Reg. 8,160 (Feb. 6, 2024) (Preliminary Decision Memorandum, *citing Certain In-Shell Raw Pistachios from Iran*, 70 Fed. Reg. 7,470 (Feb. 14, 2005) (Decision Memorandum, at Comment 1)); *see also Certain Crystalline Silicon Photovoltaic Products From Taiwan; 2019-2020*, 86 Fed. Reg. 49,509 (Sept. 3, 2021) (Decision Memorandum, at Comment 2). That is, a producer's speculation that the goods ultimately might have been destined for export to the United States is *insufficient* for a knowledge determination. *Id.* In this case, Ditar explained at verification that it assumed the goods were for export because the invoice contained [

                                                                    ].

Appx5776. But Ditar's conjecture about the ultimate destination of the merchandise does not trump the lack of documentation regarding U.S. exportation at the time of sale. Commerce's practice requires that

knowledge of ultimate exportation be both available at the time of sale

and demonstrable. *See Certain Circular Welded Non-Alloy Steel Pipe*

*From Mexico: Final Results of Antidumping Duty Administrative*

*Review*, 75 Fed. Reg. 20,342 (April 19, 2010) (Decision Memorandum, at

Comment 3) (Commerce's examination of the sales documentation

showed "no evidence to suggest TUNA made sales to the United

States"); *see also Certain Freight Rail Couplers and Parts Thereof from*

*Mexico*, 88 Fed. Reg. 65,153 (Sept. 21, 2023) (Decision Memorandum, at

Comment 1) (Commerce's practice in applying the knowledge test is "to

consider documentary or physical evidence that the producer new or

should have known {of exportation} at the time of sale").

    In this case, [      ] could have undertaken several different

actions regarding the paper bags on invoice [         ], of which Ditar

did not have any definitive or imputed knowledge at the time of sale,

including selling the merchandise in Colombia. Contrary to Plaintiff

Coalition's claims, Ditar's statement regarding the inclusion of [

    ] on the invoice is not determinative of the ultimate market

destination, and demonstrates only that Ditar's Colombian customer

paid additional costs for [            ] at the time of sale and not that

the goods on this particular invoice would be exported. Moreover,

because Commerce confirmed that [            ] are only *"normally"*

(and not "always") built into the price of home market sales, Ditar could

not assume that the separate itemization of [            ] on invoice

[            ] was indicative of market destination. *See* Coalition Brief,

at 10; Appx5776. That Ditar learned later of the resale to the United

States also is not dispositive because whether or not the merchandise

ultimately entered the U.S. market is not the issue. *Certain Crystalline

Silicon Photovoltaic Products From Taiwan; 2019-2020*, 86 Fed. Reg.

49,509 (September 3, 2021) (Decision Memorandum, at Comment 2).

Rather, the issue is whether Ditar had actual knowledge of the final

U.S. destination of the merchandise *at the time of sale*.[2]  Unlike in other

cases where Commerce imputed knowledge of U.S. destination to

respondents based on constructive evidence, *see, e.g., DRAMs from*

---

[2] Plaintiff Coalition claims in a footnote that the timing of the
unaffiliated reseller's downstream resales to the United States is
irrelevant. Coalition Brief, at 13 n.1. However, that Ditar became aware
of the possible exportation of the merchandise to the United States only
after learning of the timing of the resales from its home market
customer demonstrates that Ditar did not have either actual or
constructive knowledge of such exportation of the merchandise at the
time of the original sale.

*Korea* 64 Fed. Reg. 69,694 (Dec. 14, 1999), the record in this case does

not contain unambiguous, documentary evidence at the time of sale, or

prior to it, that the merchandise included on invoice [          ] was

destined for the United States. To the degree that customer [      ]

might have resold any of Ditar's merchandise to the United States, it

did so without any involvement of Ditar and without any knowledge of

Ditar at the time of the original sale.

### B.    Substantial Evidence Does Not Support Plaintiff's Concern That the Market Classification of One Home Market Invoice Extends to the Universe of Ditar's Reported Home Market Sales

Plaintiff Coalition further argues that a remand is necessary

because home market sales of paper bags other than those that Ditar

sold on invoice [          ] to customer [      ] might have been

exported and reportable as U.S. sales. *See* Coalition Brief, at 17-18. But

substantial evidence does not support the Coalition's claim.

First, Plaintiff Coalition identifies no record evidence to support

its conjecture, and simply speculates that misreporting of sales by Ditar

might be "widespread." *See id.* Second, Plaintiff Coalition's claim that

Commerce examined only four home market sales at verification is

incorrect. *See* Coalition Brief, at 17. Commerce examined source

documentation related to dozens and dozens of individually reported home market sales, and in no case did the documentary evidence that Commerce reviewed and collected suggest that any of the sales might be destined for anywhere other than the Colombian home market.[3] Third, Commerce verified that Ditar's other POI sales to [         ] also were destined for the Colombian market. Specifically, Ditar made only a few other sales to distributor [         ] during the POI, and Commerce determined that these sales were too small to be commercially viable as exports. *See* Appx1540, Appx5787. Substantial evidence also supports the same conclusion regarding Ditar's sales to its [     ] other ***distributor*** customers in the home market other than [         ]. Whereas the average quantity of paper bags that Ditar reported for each U.S. export sale during the POI was [         ] kilograms, the average per-sale quantity of paper bags that Ditar sold to its other home market distributor customers during the POI was [     ]

---

[3] For example, Commerce included in the sales verification exhibits invoices reflecting more than 150 of Ditar's reported home market sales of the foreign like product. *See* Appx2725—2737 (95 sales), Appx2812—2814 (5 sales), Appx2892—2896 (17 sales), Appx3069 (1 sale), Appx3084 (2 sales), Appx3109 (5 sales), Appx3127 (1 sale), Appx3139 (6 sales), Appx3147 (1 sale), Appx3156 (7 sales), Appx3358—3375 (16 sales).

kilograms. *See* Appx5865-Appx5866. The low volumes of these sales constitutes substantial evidence that supports Commerce's conclusion that the merchandise on invoice [          ] was the only merchandise that might have been re-exported to the United States during the POI. *See* Appx1540 (discussing this sale as an "outlier … in comparison to the rest of the sales in the home market sales database"). Finally, the vast majority of Ditar's home market sales (*i.e.*, more than [     ]) were to **end user** customers that did not resell the paper bags purchased from Ditar, and thus never would have exported such bags. *See* Appx1474.

For all of these reasons, Commerce appropriately found that Plaintiff Coalition's arguments with respect to the proper market reporting of Ditar's POI sales were without basis and that **at the time of sale** Ditar did not have sufficient particular knowledge that the merchandise reported on invoice [          ] would be exported. As such, Commerce's conclusion that Ditar reported the correct market for the sales reported for invoice [          ] and for all the other sales in Ditar's home market sales listings was both reasonable and based on substantial evidence.

## VI.   <u>CONCLUSION</u>

For the reasons stated above, Ditar respectfully requests that this Court reject Plaintiff Coalition for Fair Trade in Shopping Bags' arguments and find with respect to such arguments that the *Final Determination* is based on substantial evidence and otherwise in accordance with law.

Respectfully submitted,

<u>/s/ Robert G. Gosselink</u>
Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  May 22, 2025          Counsel to Ditar, S.A.

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| COALITION FOR FAIR TRADE IN SHOPPING BAGS,<br>　　　Plaintiff,<br>v.<br><br>UNITED STATES,<br>　　　Defendant,<br>and<br><br>DITAR, S.A.,<br>　　　Defendant-Intervenor. | Court No. 24-00157 |

### CERTIFICATE OF COMPLIANCE

The undersigned counsel at Trade Pacific PLLC certifies that the foregoing Ditar Response Brief, dated May 22, 2025, complies with the word-count limitation described in the Standard Chambers Procedures. The response brief contains 3,687 words according to the word-count function of the word-processing software used to prepare this brief.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink

**TRADE PACIFIC PLLC**
700 Pennsylvania Ave., SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Defendant-Intervenor
Ditar, S.A.

May 22, 2025