Slip Op. 25-129

# UNITED STATES COURT OF INTERNATIONAL TRADE

Court No. 24-00157

COALITION FOR FAIR TRADE IN SHOPPING BAGS,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

DITAR, S.A.,

*Defendant-Intervenor*.

Before: M. Miller Baker, Judge

## OPINION

[Remanding for the Department of Commerce to reconsider whether a certain transaction was a home-market or export sale.]

Dated: October 1, 2025

*J. Michael Taylor* and *Daniel L. Schneiderman*, King & Spalding LLP, Washington, DC, on the briefs for Plaintiff.

*Yaakov M. Roth*, Acting Assistant Attorney General; *Patricia M. McCarthy*, Director; *Franklin E. White,*

*Jr.*, Assistant Director; and *Daniel Bertoni*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, on the brief for Defendant. Of counsel for Defendant was *Ruslan Klafehn*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*Robert G. Gosselink*, *Jonathan M. Freed*, *Kenneth N. Hammer*, and *MacKensie R. Sugama*, Trade Pacific PLLC, Washington, DC, on the brief for Defendant-Intervenor.

*Baker*, Judge: This case arises from the Department of Commerce's 2024 order imposing antidumping duties on paper shopping bags from Colombia. *See* 89 Fed. Reg. 45,843–45; Appx1556–1558. A domestic producer and a trade union argue that certain errors by the agency reduced the dumping margin. For the reasons stated below, the court remands for reconsideration.[1]

I

As relevant here, the Tariff Act of 1930, as amended, requires Commerce to impose an anti-

---

[1] In so doing, the court declines to redact certain confidential record material that it finds does not qualify as "business proprietary information" under the applicable Commerce regulation, 19 C.F.R. § 351.105(c). *See* 19 U.S.C. § 1516a(b)(2)(B) (providing that the court "shall . . . preserve[] in any action under this section" the "confidential or privileged status accorded to any documents, comments, or information," except that it "may disclose such material under such terms and conditions as it may order").

dumping duty "equal to the amount by which the normal value exceeds the export price . . . for the merchandise." 19 U.S.C. § 1673. "Normal value" refers to the price at which the foreign product is first sold or offered for sale for consumption in the exporting country. *Id.* § 1677b(a)(1)(B)(i).[2] In other words, "'[n]ormal value' essentially refers to the price at which the subject merchandise is sold in the country from which it is exported." *Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321, 1334 n.6 (CIT 2020) (citing *RHP Bearings Ltd. v. United States*, 288 F.3d 1334, 1337 (Fed. Cir. 2002)). "Export price," on the other hand, is what the foreign producer or exporter charges an unaffiliated customer either within, *or for exportation to*, the United States. 19 U.S.C. § 1677a(a); *see also Hung Vuong*, 483 F. Supp. 3d at 1353 n.34.

To determine a dumping margin, Commerce thus requires respondents to categorize sales as either "home-market" or "U.S." Disputes sometimes arise over whether a given sale was properly categorized. In such cases, the agency "tests the extent to which the respondent 'knew or should have known' that its sales are 'for export' or 'for consumption' in the home market." *Ad Hoc Shrimp Trade Action Comm. v. United States*, Slip Op. 24-93, at 14, 2024 WL 3876483, at *5

---

[2] Normal value must also be calculated, "to the extent practicable, at the same level of trade as the export price." *Id.* The court today issued an opinion in a companion case that delves into the intricacies of level of trade. *See Ditar, S.A. v. United States*, Slip Op. 25-128.

(CIT 2024) (quoting *Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322, 1330–31 (CIT 2000)).

This standard is called the "knowledge test." *Z.A. Sea Foods Priv. Ltd. v. United States*, 569 F. Supp. 3d 1338, 1352–53 (CIT 2022). It "is used to (1) exclude from Commerce's calculation of [normal] value and (2) include in [its] calculation of U.S. export price any sales a producer knew or should have known were for exportation to the U.S." *Id.* at 1353. The test focuses on knowledge at the time of sale, not on later-acquired information. *Hyundai Elecs. Indus. Co. v. United States*, 342 F. Supp. 2d 1141, 1146 (CIT 2004); 64 Fed. Reg. 69,694, 69,713 ("Numerous court decisions . . . have held that the appropriate standard for making this decision is 'knew or should have known at the time of the sale that the merchandise was being exported for the United States.'").

The test encompasses two types of knowledge: (1) "actual" and (2) "imputed" or "constructive." "The only way to determine actual knowledge is through an admission of the respondent." *Allegheny Ludlum*, 215 F. Supp. 2d at 1332 (quoting *INA Walzlager Schaeffler KG v. United States*, 957 F. Supp. 251, 265 (CIT 1997)); *see also Ad Hoc Shrimp Trade Action Comm. v. United States*, Slip Op. 25-85, at 17 n.6, 2025 WL 1938361, at *6 n.6 (CIT 2025) (quoting Commerce's use of that sentence). But the lack of such an admission is not the end of the inquiry. It simply means the evidence does not support a finding of *actual* knowledge.

Consistent with case law, agency precedent and guidance are clear that a producer may have "impu-

Ct. No. 24-00157 Page 5

ted" or "constructive" knowledge—that is, it "should have known"—regardless of whether it has "actual" knowledge. "[E]ven if a respondent denies knowledge of the destination of its sales, the Department may review all facets of a transaction, and based on extrinsic source data, determine that it is appropriate to impute knowledge in a given case." 64 Fed. Reg. at 69,713 (citing *INA*, 957 F. Supp. at 265). Commerce considers "documentary or physical evidence" to be "more probative, reliable, and verifiable than unsubstantiated statements or declarations." *Pistachios from Iran* I&D Memo at 10, accompanying 70 Fed. Reg. 7470. Examples of the sorts of material the Department considers relevant to assessing constructive knowledge include "certificates, shipping documents, contracts, or other such documents stating that the merchandise was destined for the United States"; product labels or packaging so stating; and "whether the features, brands, or specifications of the merchandise indicated that it was" U.S.-bound. *Id.* at 11.

II

In 2023, the Coalition for Fair Trade in Shopping Bags[3] petitioned Commerce to impose antidumping duties on imports of paper sacks from Colombia. Appx1000. The Department opened an investigation and, as relevant here, selected that country's producer Ditar, S.A., as a mandatory respondent. Appx1000–1001.

---

[3] A domestic producer and a trade union. ECF 9, ¶ 3.

Commerce preliminarily found that Ditar was dumping bags in this country. 89 Fed. Reg. 319, 320. In the verification that ensued thereafter, the company explained that one transaction—let's call it Transaction X—"was unique in that it was the only home-market sale made to an unaffiliated party during the [period of investigation] for which it had knowledge that the merchandise would subsequently be exported to the United States." Appx5776. This knowledge was based on two clues indicating that the bags in question were for the American market. *Id.*[4] Ditar emphasized that because of these clues, it "had knowledge that the ultimate destination of this unaffiliated home-market sale was the United States, but, . . . because the home-market customer had complete control over the timing of any shipments to the United States," it "did not know whether the sale would be exported during the" period of investigation. *Id.*

In its final determination, the Department found— over the Coalition's objections—that the company properly reported Transaction X as a home-market sale. Appx1539. The agency explained that the record lacked any evidence that Ditar signed or prepared documentation stating that the merchandise was intended to be exported to this country. *Id.* Nor did the labeling or packing so indicate. Appx1539–1540. And the company charged Colombia's value-added tax to the purchaser, which it wouldn't have done had the

---

[4] Specifically, these were that certain fees—"plate charges"—linked to this transaction were only associated with U.S. sales, and "the design" of the bags in this batch "itself reflected ultimate use in the U.S. market." *Id.*

merchandise been "sold to the United States." Appx1540. Thus, Commerce included Transaction X in the calculation of Ditar's home-market sales price.

### III

Invoking jurisdiction conferred by 28 U.S.C. § 1581(c), the Coalition sued under 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i) challenging Commerce's decision to accept Ditar's sales reporting. ECF 9, ¶ 1. The Colombian company intervened as a defendant supporting the government. The Coalition then filed a motion for judgment on the agency record, which is fully briefed and ripe for disposition.

In § 1516a(a)(2) actions, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The question is not whether the court would have reached the same decision on the same record. Rather, it is whether the administrative record as a whole permits Commerce's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

Ct. No. 24-00157 Page 8

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up); *see also SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 382 (Fed. Cir. 1983) (if Commerce makes a choice between "two fairly conflicting views," the court may not substitute its judgment even if its view would have been different "had the matter been before it *de novo*") (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

The court also reviews determinations to ensure the agency engaged in "reasoned decisionmaking," meaning its result must be "within the scope" of its authority and "the process" it uses to reach that outcome "must be logical and rational." *Michigan v. EPA*, 576 U.S. 743, 750 (2015). Reasoned decisionmaking requires the agency to "examine the relevant data and articulate a satisfactory explanation . . . including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). But courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.*

IV

The Coalition challenges the Department's finding that Ditar correctly reported Transaction X as a home-market sale. ECF 23, at 5. It argues that an admission in the verification report establishes the company's actual knowledge that the disputed sale was bound for export. *Id.* at 13–14 (citing Appx5776). It faults Commerce for ignoring that evidence. *Id.*

The agency addressed the verification report as follows:

> Ditar informed Commerce officials at the outset [that], in its preparation for verification, a review of the sales-related documentation indicated a certain type of charge on the invoice that led company officials *to believe* that the goods *were likely intended* for resale to the United States (the invoice included two reported sales transactions).

Appx1539 (emphasis added).

The Department then found no evidence the company had either prepared any contemporaneous documentation stating that the merchandise was bound for the United States or used any labeling or packaging that so indicated. Appx1539–1540. It also noted Ditar charged value-added tax for the sale and that Colombian law does not require tax on sales for export to the U.S. but does require it for almost all domestic sales. Appx1540. Therefore, it reasoned, the tax charge "is indicative that [the company] considered the sale to be a domestic sale at the time of execution and does not support a presumption that Ditar knew at the time of sale that the merchandise would be re-routed to the United States." *Id.* "Thus, Commerce concludes that the sale in question was properly reported as a home-market sale." *Id.*

There are two problems with this analysis. The first is that the final determination nowhere addresses the verification report's multiple references to Ditar

personnel's statements that they "had knowledge" of the merchandise's destination. The government now seeks to wave away the issue by claiming that "Commerce gives greater consideration to physical evidence and documentation prepared at the time of a transaction than to unsubstantiated statements or declarations made by company officials." ECF 29, at 46 (internal quotation marks omitted) (citing *Silicon Photovoltaic Prods. from Taiwan* I&D Memo at Comment 2, accompanying 86 Fed. Reg. 49,509).

But that argument wrongly conflates the two prongs of the knowledge test. A respondent's admission that it knew of the U.S. destination is enough, by itself, to establish actual knowledge if it shows what the company knew at the time of the sale. Evidence of constructive knowledge, such as the "physical evidence and documentation" the government cites, becomes relevant only "*[i]n the absence of . . . an admission,* or actual knowledge." *JA Solar Int'l Ltd. v. United States*, 606 F. Supp. 3d 1370, 1379 (CIT 2022) (emphasis added); *see also Pistachios from Iran* I&D Memo at 11 (acknowledging that documentation, contracts, packaging, and the like are relevant "to determine whether the producer had constructive knowledge" and distinguishing that from actual knowledge based on an admission).

Here, the verification report quoted a company statement that may have been an admission, and the report described it using past tense—the company "emphasized" that it "*had* knowledge." Appx5776 (emphasis added). Commerce dodged confronting the elephant in the administrative hearing room—whether

Ct. No. 24-00157                                                Page 11

this was an admission. Nor did it discuss whether "had knowledge" referred to what Ditar knew at the time of sale or whether it meant some later date. Instead, the agency jumped directly to constructive-knowledge evidence without first deciding whether there was an admission and, if so, what weight to accord it.[5]

The second problem is that, despite its examination of evidence relevant to Ditar's constructive knowledge, Commerce never discussed whether the company "should have known" the sale was destined for the U.S. The agency only found that "the record does not support a finding that Ditar *had knowledge* [i.e., 'knew'] that the merchandise was intended" for export to the U.S. Appx1539 (emphasis added). After discussing the constructive-knowledge evidence, it repeated that the inclusion of the value-added tax "does not support a presumption that Ditar *knew* at the time of sale that the merchandise would be re-routed to the United States." Appx1540 (emphasis added).

---

[5] The Department has observed that an admission may carry particular weight when it cuts against the admitting party's own interest. *See Silicon Photovoltaic Prods. from Taiwan*, I&D Memo at 35, accompanying 79 Fed. Reg. 76,966. Ditar's statements that it "had knowledge" the merchandise in the disputed sale was destined for the U.S. were not self-serving because it reported the sale in the home-market database, meaning that if the agency found that incorrect, the company might suffer negative consequences. *See id.* at 33 (casting doubt on the value of "unsubstantiated statements or declarations that may be in the *best interest* of the investigated company") (emphasis added).

But documentary evidence of that sort is not probative of *actual* knowledge. After all, "[t]he only way to determine actual knowledge is through an admission of the respondent." *Allegheny Ludlum*, 215 F. Supp. 2d at 1332. The agency's discussion of whether evidence *other than* "an admission" showed what "Ditar knew at the time of sale" was thus contrary to law. And its analysis is incomplete because it did not discuss whether the company *should have known* of the bags' ultimate destination—a question for which the non-admission evidence would have been relevant.

The court therefore remands. The agency must address the "actual" prong of the knowledge test on its own merits without importing evidence relevant only to the "constructive" prong. If Commerce finds that Ditar's statements alone are not admissions that establish actual knowledge at the time of sale ("knew"), it must then examine whether the company had constructive knowledge based on the other evidence in the record ("should have known").[6] Finally, if the agency

---

[6] It is therefore premature for the court to address the Coalition's contention that the agency should have applied total or partial facts otherwise available, and in so doing used an adverse inference. *See* ECF 23, at 14–19. If, on remand, the Department concludes that Ditar misreported the disputed sale, it may consider whether the error is correctable or whether it must use some variety of facts otherwise available (either with or without an adverse inference). It should also consider whether it is appropriate or necessary to allow the company an opportunity to cure any deficiencies under 19 U.S.C. § 1677m(d). *See Matra Ams., LLC v. United States*, 681 F. Supp. 3d 1339, 1376 (CIT 2024).

**Ct. No. 24-00157** **Page 13**

recalculates Ditar's margin, it must then adjust the "all-others" rate derived from it.

Dated: October 1, 2025  /s/ *M. Miller Baker*
       New York, NY  Judge